And that leads to our final case this morning, No. 25, Part 54, Ridge Corporation v. Kirk National Lease. Okay, Ms. Carwile. Good morning, Your Honors. Tiffany Carwile here on behalf of Ultim LLC. May it please the Court. The last time I was here, I had requested that the Court conduct a claim construction because it appeared that the District Court was confused regarding this Court's case law. Seemingly, in response to that request, this Court advised the District Court to reconsider the party's arguments. Unfortunately, the District Court did not do that. So I am again asking this Court to conduct a proper claim construction in the hope that we will not be back up here for a third appeal. There are three key terms that the Court did not properly construe. Flexible along the entire length of the panel. A first outermost surface, a second outermost surface, and insulated. A proper claim construction of any of these three terms demonstrates not only that the plaintiffs are unlikely to succeed on the merits, but that they will fail on their infringement claim. Unless the Court wants to start elsewhere, the first term to be construed is flexibility. The plain language of the term flexible along the entire length of the panel is that it's innately flexible. That any point of that panel can be flexed. And this is confirmed by Dependent Claim 4, which says that compression gaps can be added to make the panel more easily bend. Therefore, it's presuming that the panel on Claim 1 already bends. It doesn't bend because of compression gaps. It bends because of the materials chosen for the panel are flexible on their own. And, Your Honors, this is confirmed by the clear disavowal in the prosecution history relating to the flexibility. If you look at Appendix 1700, it says that the flexibility of both the thermoplastic membrane and the foam from which the panel is made that allow the panel to flex along the tracks. It is the material itself that allows flexibility, not any addition of grooves, compression gaps, hinges, or whatnot. The foam, and then it goes on, the foam and the liner chosen for the panel are designed to flex. Flexibility is a property of the material chosen for the panel. And then it goes on, it is the material itself that flexes. And that this is specifically related to the addition of the language flexible along the entire length of the panel. Contrary to plaintiff's argument, this language, this disavowal does not relate to the language that was not accepted about not having hinges. This language was specific to the flexible along the entire length language. Okay, can I ask, if you're right about that claim construction, is there a dispute that might have to be resolved on remand about whether the accused doors come within the flexible at every point, as you say? No, Your Honor. The panel we present, I don't have them demonstrative here, but the panel was offered as an exhibit to the trial court. That panel, you can't bend it. It is as hard as the wood, as hard as any other, the hard surfaces. You can't bend it aside from the particular panel. Was there testimony about that, you can't bend it? There was testimony from the witnesses, particularly Dominic Grandomenico. He testified. He was the one that we introduced the panel with, and he showed during his testimony that you can't bend that panel, Your Honor. And so that is in the trial testimony. I don't have the exact page number for that, but that was his testimony at the trial court. In addition, there has been no, first of all, it is the plaintiff's responsibility to put forward evidence that, at this stage, that the product meets all the limitations in the patent. And they have never said that the Alton panel or the K&L door is flexible on its own. They presented no evidence that it can flex on its own. And the only evidence before the trial court was that it is completely inflexible and that the only way it can go above the tracks. So for purposes of review of the preliminary injunction, all we would need to say is there has to be this kind of pervasive flexibility. The claim construction, to the contrary, by the district court was wrong. There is no evidence showing a likely or probably even argument showing a likelihood of success of infringement under the now newly adopted claim construction. But that would leave the case still intact, and there could be litigation about that later. Your Honor, I would say that you might think you might make a motion for summary judgment or something, but that's not what we are dealing with. That is correct, Your Honor. That is not what you're doing. However, we do already have a motion to dismiss pending, and it's pending, waiting for this court's decision on the claim construction. But that is not before this court at this time. So if the court does find that the flexibility does require innate flexibility, the only evidence is that the panel is not flexible. And so the court would need to reverse the trial court's determination on the preliminary injunction. With regard to the second factor, the first outermost surface, second outermost surface, this is also clear from the patent what that means. If you look at, excuse me, the patent, it says that the thermo- It doesn't permit a sandwich composition. I'm sorry, I didn't hear you, Your Honor. It doesn't permit a sandwich composition. That is correct. So tell me if I'm thinking of this right. It clearly doesn't permit a completely sandwiched composition. I took the other side to be making the argument, when you have the little grooves in the foam, that while most of the outer surface opposite the truly outer surface is covered in the thermoplastic, there will be these grooves that are kind of nakedly exposed to the outside. So on those places, it's the foam that is the outer surface. Your Honor, they do make that argument. However, if you look at the wording of the patent- There's only one outer surface on each side. Correct. There's only one outer surface, and it says the outer surface of the door. So it's not a silver of the door. It's the entire door. They made a clear disavowal also during the- I think I understand that. I'm sorry. And then on the third point, the insulating, insulated, what do you think the proper construction is? Yes, Your Honor. With regard to insulating, our position is that insulating is specific to our value, and that the only R value listed in the patent is 14 to 50. Wait a second. You can't argue that it has to be that specific R value. Correct, Your Honor. I'm not saying that it has to be 14 to 50. I would say that if you look at the UltraVision case that this court came down with a few years ago, that in that case, it was an IP, an ingress protection for waterproof. Is your argument that insulating means it has to be a door that's sufficiently insulated to serve as a door of a refrigeration unit?  And also that the only information in the patent with regard to that is at least 14 R value. And that is similar, almost directly analogous to the UltraVision case that was dealing with waterproof in the district court. I don't think you can argue that it has to be 14. I would just refer this court to the UltraVision case. That had a very similar fact pattern where it was an IP, ingress protection, and the patent said 65 to 68. The district court said the claim construction for waterproof would be an IP of 65 or greater. And this court upheld it, saying that everything in the patent affirmed that. And the same is true here, Your Honor. Everything in the patent affirms a 14 or greater. However, even if the court disagrees, it is clear from the patent that it has to be suitable for use in cold storage. And the door that we have, the only testimony is that it cannot be used in cold storage because it's R value is minuscule. And so for that reason, also, this court could reverse and should reverse the preliminary injunction. And I believe my time is almost up. Can I just double check? So there's a patent infringement claim here, and then there are two other claims. One is a state law tortious interference with contract claim, and then there's a false marking claim. And I guess, would I understand correctly that as to those, we don't need to reach the likelihood of success that your core pitch sufficient to reverse the preliminary injunction is that both of those rest on conduct that is distinctly in the past for which there's no likelihood of repetition in the future? I would agree, yes. And additional, with regard to the interference, the court, particularly for Altum, didn't find that there was any likelihood of success at this point in time on that state law claim. So we didn't address that because the court found in our favor, at least Altum's favor with regard to that. And yes, with regard to the patent, the false marking, that is sufficiently in the past, and there's no reason to have a preliminary injunction, and particularly a preliminary injunction regarding infringement with regard to a alleged false marking. Does the non-infringement part of the injunction matter to you all? Not to Altum, Your Honor, but it very well could matter to my counsel at K&L. Okay. Well, let's hear from Ms. Watt. Yes, thank you, Your Honor. Okay. May it please the court? My name is Melissa Watt, and I represent the K&L defendants, which are Kirk National Lease Company and Truck and Trailer Parts Solution. And I will be addressing the trial court's error in failing to give construction to the term second outermost surface specifically. What about the rest of the injunction? I'm sorry? Does it matter? Does it matter? Yeah. So the non-patent claims matter. The non-patent infringement claims. False marking is a non-patent claim. Yes. Yes. So the remaining claims that are a portion of this court's order do matter to our client, partially for the reasons that have already been pointed out, because they rely on past conduct, that there is no evidence that they are likely to reoccur, but also because- The past product is the claim that your product was patented. The past conduct of it is the basis of the non-patent claims. It was based on an assertion that you had argued that your product was patented when it wasn't. That's part of it. Part of the prior conduct was a letter that referred to, and some marketing, that referred to the door, the handle door, as patented as opposed to patent pending. So that was a portion of it, but the reason that it's significant here, and it matters for the injunction specifically, is because not only was it past conduct that's not likely to reoccur, but also the conduct that's been enjoined by the injunction is not narrowly tailored to- What's the other conduct beside the false claim of being patented? The letter that related to being patented was sent to a customer, or one of- Put aside the false claim of it's being patented. Is there anything else? There were some other arguments that were made by Ridge relating to the product in the market and having some impact on quality, but there wasn't substantial evidence to solidify their opinion that the door being produced and being sold would have any concrete impact going forward, partially because at the time of the first injunction issued- That sounds like an irreparable injury argument. I'm sorry? That sounds like an irreparable injury argument. What else is there in the injunction? We've got the patented issue as to whether it was patent infringement. We've got the past false claim that your product was patented when it wasn't. Is there anything else, or is that the whole universe of liability issues? Aside from what was argued as the misleading marketing as patented, which relates to the letter that was sent, Ridge also made arguments that the product was inferior and so would have an impact on Ridge's- That's irreparable injury. That's not the liability issue. The trial court did cite two at a high level, market share and price erosion. Same problem. That's irreparable injury. It's not a liability issue. To my knowledge and my understanding, that is the extent of the evidence in the record relating to- Go ahead. You're out of time, but we'll give you a little bit more time. As to the second outermost surface of the door, if you look at the preamble, it says for claim one, what is set forth is an insulated overhead door that has six sides. That includes the top, the bottom, the first side, the second side, the first outermost surface and the second outermost surface. Then the claim sets forth the insulated door comprising six elements. The first outermost surface, which must be the thermoplastic layer, the second outermost surface of the door, which must be made out of foam, and then discusses how those are formed together to create a panel. But the district court in their construction ignored the word outermost and concluded that the required foam layer is necessarily the second outermost surface of the door simply due to the fact that the layer is foam. But this definition gives no effect to the word outermost because any foam surface that is opposite the first outermost surface at that point that is of the requisite size would fit this definition. The interpretation isn't exactly backwards based on the patent because which layer is outermost is determined by the configuration of the layers not the material of the layers and the claims do not define the outermost surface of the door as the foam insulating layer. Rather, the claims first require the door to have a second outermost surface and then require that the second outermost surface of the door be formed from a foam insulating material. And with that, I think we're out of time. Thank you. Mr. Tackett. Your Honor, Your Honors, may it please the Court, Christopher Tackett on behalf of Appalese Cold Chain and Ridge Corporation. The District Court correctly construed the patent and found a likelihood of success on the merits on the patent. I can go through those items that my colleague on the other side of the V was discussing. I'm happy to jump right into those. Insulating, yes, Your Honor. Start with the one that she started with, which if you would, the flexible at every point. Sure, I'd be happy to do so. So the most important aspect of that one is the words that opposing counsel left out, right? Insulating along its length so as to approximate the curvature of the doorframe. The insulating is defined only with respect to the ability to traverse the curvature of the doorframe. Pardon me? Talk about flexibility. So it's defined in the claim, Your Honor, solely with respect to its ability to approximate the curvature of the doorframe. And the accused door does this, as the District Court found. The dependent claim 4 tells us that there can be ridges, compression gaps, put into the door to assist it with traversing the curvature of the doorframe. So this idea that the material must be so flexible as to bend on its own is not representative of what the claims say, Your Honor. The biggest issue and where opposing counsel spends the most time in their brief is talking about insulating and what that means. And I think, Your Honor, Judge Dyke... It has to mean a door that can be used in a refrigeration unit, a cooling unit. No, Your Honor. Dependent claim 14... It's part of the way the spec tells you it is, right? No, Your Honor. The summary of the invention says that the invention taught under the patent provides many potential benefits over the prior arts. One of them is the elimination of seams in the door so you have a flat surface where you can put decals on. What does that have to do with insulating? It insulates from light, from sound, from dirt, debris. The idea that heat... Yes, Your Honor. Where in the specification does it talk about insulating from sound? It does not. It uses the word insulating, Your Honor. And so insulating is not limited by its barest form. It's not limited to protection from heat transfer. Is there any discussion of other kinds of insulation like electrical insulation or sound or light or dirt? There is discussion about the elimination of horizontal seams from the door which allows for a clean, uninterrupted surface which has the benefit of keeping out the other elements, not just heat and also allowing for a flat surface on which advertisement can be placed. That's your gloss on it. Where does the spec say it keeps out dirt, sound, whatever? So the summary of the invention talks about how the elimination of the seams is one of the benefits. So that's what I'm pointing to there. So you're saying it doesn't actually talk about insulating from anything except heat? The claims themselves don't talk about... The spec doesn't talk about it either. Not that I recall specifically. I think the spec spends a good deal of time talking about certain preferred embodiments which under this court's case law do not dictate how we read the claims. The claims themselves don't tell us that there's any particular R value that needs to be reached. I think as some of the earlier discussion indicated, it's a different point that a particular R value like 14 is required. That's a harder sell than to say it has to provide enough insulation so that it would be useful for what in the industry is understood to be a category of refrigerated containers or possibly even freezer containers. Those are two separate things. I took it that you were making a point and I'm not sure really whether you were. Are you disputing that in the industry the industry whose skilled artisans would be reading this that they wouldn't really understand there to be this recognizable category of doors for freezing, doors for refrigeration and then other doors? In the industry, there would be doors that you would use for cold storage, absolutely. The patent just doesn't contain such a limitation. You're including both freezers and refrigerators in cold storage, is that right? Yeah, those would be different levels, different specifications. The patent doesn't, the independent claims don't require that and Dependent Claim 14 and the Doctrine of Claim Differentiation also tell us that the patent doesn't teach that specifically. If the industry recognizes this categorization of different kind of container doors, why isn't it a natural understanding of the word spec to mean a door suitable for that industry-recognized category, the cold storage category? I can only take insulating by its plain meaning. I can't inject a certain specification into it. I think I would do dishonor to the patent by doing that and to the dictates of claim construction, Your Honor. If Wachtell wanted it to be cold storage, he would have said so. If Wachtell wanted it to be, you've got to hit an R value of 14, it would have said so in the independent claims. It does not. I think the summary of the invention is important because it talks about the different benefits over the prior art. One of the main benefits is the elimination of the horizontal seams. Another of the main benefits is it's lightweight. If you have a worker on the back of a truck and the benefit over the prior art of Rowan Bush is eliminating these openings. If that's the invention, why have the word insulated? Your Honor, I'm going to answer your question right now. I wasn't avoiding it. The patent, under its plain terms, it says that the thermoplastic layer by itself is insulating, which counters against the notion that the word insulating inherently means cold storage. The first layer, the first outermost surface, the thermoplastic layer is called insulating. So we know from that that it doesn't mean cold storage only. I have no idea what you're saying. The first outermost surface is a sheet, a continuous sheet of thermoplastic. A sheet of thermoplastic is never going to be good enough for cold storage. It wouldn't be insulating. That's what I'm saying, Your Honor. The wording of the patent describes that first outermost surface, the thermoplastic layer, as being insulating. That's really important. When it's describing the first outermost surface in Claim 1, it uses the word insulating describing that first outermost surface. Can you give me a line number? I'm not seeing any reference to that as being insulating. I don't have it right now. I don't want to take the Court's time reading line by line. It's in our brief. I recall it from our brief. I apologize. I do want to touch on the outermost surfaces point since I was just discussing it. It's important to remember that we're talking about a door. If you're standing on the outside of a truck, this would be the door. The first outermost surface is the first thing you see. That's the thermoplastic. The second outermost surface is the continuous layer of foam. That's the second outermost surface. Unless there's something on the other side of it. Then it's not outermost at all. It's completely inside. I disagree respectfully. That reading removes the word first and second. Because there could be a third outermost. You're measuring distance from the outside. This is the first outermost, the face of the door. The second outermost would be the foam. If you have that optional additional layer that's discussed in dependent claim nine, it would be just as true to call that the third outermost surface. The patent specifically tells us that you can have that additional covering. It's very specific in claim nine. That covering could be made of plastic, could be made of cloth. There's different options. It's specifically provided in that dependent claim that you can add additional layers. Reading that in to say the patent can't read on the accused door, it's not harmonious with what we see in dependent claim nine. I don't think you need to look at extrinsic evidence whatsoever here. The district court said we don't think you need to either. Sometimes a picture is worth a thousand words. If you just look at page 20 of our brief, there's a full page printout of Appellant Altom's marketing materials. They say the PET foam is an excellent insulator. They remark it bends. It's not rigid like some of the competitors. Now I don't think you need to get there, but their marketing is the opposite of the positions that they're taking. And so I think that picture is truly worth a thousand words. The principal of Altom, Dominic Grandomenico, he tried to provide expert testimony in the second injunction here. He relied on a book. He said the book is authoritative. It's called The Fundamentals of Heat and Mass Transfer, 5th edition, by David DeWitt and Frank P. On cross-examination, Mr. Grandomenico admits that that textbook says that plastic is insulating and that foams are insulating. They're insulating systems, is what his textbook says. And he said that was his textbook at Purdue. It was authoritative text in this area. And he had to admit that the text says those materials are insulating. I thought that was important to mention. It doesn't pop out in the briefing. You called out the large picture on page 20. It says thermally efficient, our PET foam cores are excellent insulators with R value comparable to tradition PU foam panels. PU is polyurethane. Yes, your honor. And if you were looking at a cold storage application, you would use polyurethane most likely or something similar. But the patent tells us that open cell foams and closed cell foams are suitable. That's in claims 5 through 7. And so the fact that a closed cell foam is going to be suitable also would tell one skilled in the art that this isn't limited to cold storage applications, frankly, your honor. I see that my time has expired. So unless there are any questions remaining, I'll take my seat and ask that the judgment of the district court be affirmed. Thank you, your honors. Thank you, your honor. Understood. With regard to the insulating, there is no claim that says that thermoplastic membrane is insulating. That language is not there. That is why the council could not find it. It just does not exist, your honor. Neither claim nor spec? Correct, your honor. With regard to flexible, the language being around the curve track is not sufficient. That language was added earlier on in the prosecution history. If you look at page 1756, one of the amendments mentions a curved track, and that was insufficient to get this patent patented. They had to add flexible along its entire length of the panel in order to get it to be patented. So that language means something in addition to being able to traverse a curved track. And that means innately flexible. The patent process history couldn't be more clear of a disavowal with regard to flexibility, your honors. What are we to make about this picture on page 20 of their brief? Correct, your honor. With regard to PET foam, we don't dispute that PET foam can be insulating. The problem is if you look at the patent, if you look at the testimony... What is this a picture of? Is this the door in question? No, your honor. That is not a picture of the door in question. It's a picture of some of their products that they offer. With regard to PET foam, it matters on the thickness. The patent itself mentions that thickness is important for R-value. The expert testimony mentioned that thickness is important for R-value. So if you're wearing a jacket, its thickness will increase the protection from heat. And so that's what it is. PET foam can be insulating, but PET foam is not insulating as used in the patent because the patent, at least with regard to the K&L door, because it's so thin, particularly when you put the grooves, it's less than one. And an R-value less than one is not insulating as used in the cold chain patent. And so I would request that this court reverse and remand.